And we'll move on to the last case for today, which is Kittson. Good morning, and may it please the Court. My name is Michael Benson. I represent Daniel Kittson. And I would like to reserve five arguments, five minutes for rebuttal. You got it, five minutes. Five arguments, no. Five minutes, yes. While this case presents four strong arguments on appeal, I would like to start by focusing on the statutory construction issue. There is no doctrine that allows a court to expand criminal liability within a statute beyond the plain language of that statute. Under the unique and unusual circumstances of this case, Mr. Kittson was found guilty only of aiding and abetting the transfer of a PPSH-41. Wait, hold on. How do we know that's the case? Your Honor, we know that for two reasons. The first is that the jury, there were two counts. One was felon in possession of a firearm. Right, no, but the Supreme Court has said you can't analyze one count by looking at the verdict in another. So we have to review each count of conviction separately. And the count was charged with both transfer and possession, correct? The count was charged with both transfer and possession. So we don't know whether he was convicted of, because there was no special verdict in this case, correct? We had requested a special verdict form and it was denied. Right, so there was no special verdict form. So we don't know if the theory the jury convicted on was transfer or possess, or if six people thought it was possess and six people transferred. We don't know. I think in this case where the only difference between the two counts is that in the machine gun count, the jury had to find in addition that the weapon was a machine gun. And where Mr. Kitson stipulated that he knew he had been convicted of an offense punishable by more than a year, the only way to make sense of that verdict is that — you can't do what you're trying to do right now. And Powell, didn't Chief Justice Rehnquist say, Justice Rehnquist then and Powell say, look, we don't know why verdicts come the way they do. And you can't analyze parts of this one to try to analyze that one. What's more, with respect to the aiding and abetting theory — Is my reading of Powell wrong? I mean, counsel, there's clear Supreme Court authority saying, as I understand it, we can't do what you're saying. Do you have a case that says we can do what you're doing right now? Your Honor, if the court finds that the verdict is unclear on this, the jury was still instructed on a theory of liability that included the aiding and abetting. Okay. That's fair. So I think we can talk about the count of conviction without talking about the other one. And you can explain why that count was problematic. I think you might be right. You might be onto something there. But I don't think it's because we can look at count two. You have to analyze just count one and explain why one of the theories in count one was invalid, because there were two. Your Honor, I don't agree, but I'll move on. With respect to the aiding and abetting theory, the idea was that he aided and abetted the transfer of a firearm, the transfer of the PPSH-41. And in this case, 922.02a specifically excludes any transfer to the government. The transfer in this case was to an undercover ATF agent who was working on behalf of the United States government for a department or agency of the United States. I think that the main counter-arguments to Mr. Kitson's view of this statute have to do with concerns over his culpability or with general policy reasons. And I'd like to contrast this case with DeRusso, which is a Fourth Circuit case, albeit on a different section of 922. In DeRusso, there was no doubt that the defendant intended to transfer firearms to Haiti. He developed a complicated scheme to do this. He went so far as to fake documents, including a fake military rank of colonel, in order to support that scheme to transfer the firearms to Haiti. And what's more, he wanted to transfer the firearms to individuals in Haiti in order that those firearms be used in violent conflict in Haiti. He got on a plane, and he went to Haiti to do just that. And the only reason that those firearms didn't go to individuals was because he was intercepted by law enforcement. In DeRusso, the Fourth Circuit said that because that section of 922 doesn't include attempt liability, as our section does not, Mr. DeRusso was not guilty of transferring the firearms to an unlicensed person in Haiti. So just to understand your theory, I'm going to provide a hypothetical, because that will help me kind of understand where you're going. Let's assume for a moment I'm an arms trafficker, and I get a phone call from a guy, and he says, hey, I am a DEA agent, and I want to shoot up a school. And I understand you can get me a machine gun. So can you transfer me a machine gun? And I'm a DEA agent, and I'm going to use this machine gun to shoot up a school. Under your reading of the statute, that transfer would not be prosecutable, correct? I don't think that that is correct, because I'm guessing that that DEA agent wouldn't testify that they took the firearm on behalf of the United States to shoot up a school. So the words on behalf, I'm looking at the language here in the statute. I don't see those words in the statute. It says the transfer is to the United States. Right. And I would think that in your hypothetical the transfer is to a private individual who also happens to be a DEA agent. So in that situation, you're saying we would read the words on behalf into the statute? I don't think we'd read the words on behalf into the statute. I think that the firearm wouldn't be transferred to the United States. So even though he works for the United States, and he's an agent for the United States? I think in that hypothetical that's correct. And the difference would be what? In this case, the DEA agent testified clearly that he took the firearm on behalf of the Bureau of Alcohol, Firearms, and Tobacco. And so if the guy said, on behalf of the DEA, I'm going to shoot up this school? And that were accurate, yes. So in that situation, okay, so just to be clear, so you're not asking us to read on behalf into it. You think that on – to walk me through that again. So a transfer to the United States. Correct. So when would it not be to the United States if it's given to a Federal officer? I would think that it wouldn't be a transfer to the United States if the Federal officer was taking it for their own private use. Okay. But that's not in the statute either, those words. No. The words are to the United States. Right. So I guess what I'm trying to understand is that when I asked you the hypotheticals, your responses were to read words into the statute. And you're saying that in this case, we shouldn't read words into the statute. If my first response was inarticulate, I apologize. What I think the operative word that distinguishes this case from your hypothetical are the words in the statute, to the United States. If this Court were to hold that any time a Federal agent possesses a firearm, that firearm has been transferred to the United States, then I agree with you. That would also fit in under your hypothetical. I just don't think that that's right. I think that when a Federal agent owns something that they're using for their own personal use and take for their own personal use, that that's not a transfer to the United States. Okay. There are a number of cases from other circuits, which I didn't see mentioned in the briefs, that talk about this statute. And they say it's authorized by the government for the benefit of the Federal, State, or local government entities. The Eleventh Circuit's read the statute that way. The Tenth Circuit's read the statute that way. I think the Fourth Circuit's read the statute that way. I wanted to get your response to those cases. Your Honor, in those cases, in none of those cases is the difference between the possession and the transfer section of 922.02a at issue. And possession requires the authority of the United States because, and I think there's clear law about this, when individuals who also happen to work for the government own firearms, their possession has to be authorized by the United States to be protected under the statute. The transfer possession, the transfer section doesn't include that restriction. What's more, I think my take is as long as the transfer is to the United States, then it is for the benefit of the United States. The purpose of this statute is, I think, twofold. First, I think the statute takes the position that there is nothing inherently wrong or immoral about wanting to own or owning machine guns. This is not a statute that is targeted at machine gun owners or prospective machine gun owners. And that's why, up till today, it is still possible to own a machine gun in the United States, and over 700,000 machine guns are lawfully owned in the United States. Instead, this statute is directed at a purpose of removing machine guns from commerce. And when a transfer is to the United States, I think the machine gun is removed from commerce and is possessed by the government. And can you then talk about, there's this Ninth Circuit case called Perry that the district court relied very heavily on. Can you explain why that case, I read your brief and I wasn't sure I followed, why that case isn't very close to our case? So the district court relied on BASCU, which relied on Perry. And the difference in Perry, first off, Perry is a different statute. It's not a 922-0 case. No, I mean, but it's pretty close. It talks about the sale. It cited a Fifth Circuit case, Brooks, which held that the exemption in that case only applied to certain conduct, and sales was not on the list of conduct within the exemption. So it didn't protect sales at all, regardless of whether or not they were to the government. You mean transfer was not in the statute. Sale wasn't a statute, wasn't it? Yes, I think that's right. Okay. So you're saying because 925A did not have the word transfer in it, therefore we can ignore that case. That's what the Fifth Circuit said. The Fifth Circuit's holding was that the reason that it wasn't protected was because of the conduct didn't appear on the list of protected conduct in the exemption. Now, the Fifth Circuit subsequently said that the argument that you're advancing here is absurd. So how do we read that Fifth Circuit law in light of that? That case was a possession case. And I think it would be absurd to say that, for example, Mr. Bohannon's possession of the PPSH-41 in this case was authorized by the United States. So I just don't think that that Court considered this argument. And I've already gone here a little bit, but I think one of the reasons that we know that this transfer protection is broad is by comparing it with the neighboring provisions in the statute. O2B protects only transfers that lawful transfers, lawful possession of firearms lawfully owned before the enactment of the Firearm Owners Protective Act. Those words don't appear before transfer. And as we've just talked about with respect to possession, very next comma over, possession requires the authority of the United States, which also does not appear in the transfer protection, which is part of why I think we read that broadly. The government has relied on a number of cases that narrow criminal statutes. I do not think that those cases support the notion that you can broaden criminal liability beyond the plaintext of the statute to cover otherwise culpable conduct that you feel that the statute missed. Excitement video, for example, narrowed the statute by putting the knowing. The concern there is that individuals could engage in conduct that they have no way of knowing violates the law and that we should not do that without express and clear instructions from Congress in a serious case to do that. Those concerns just don't apply when we're considering whether a criminal statute reaches particular conduct. I see I'm reaching my time for rebuttal. I'd like to reserve the rest of my time.  Good morning, Your Honors. May it please the Court. Sarah Barr appearing on behalf of the United States. The defendant in this case brokered the black market sale of a machine gun to a person that he thought was a gun and drug trafficker. Subsection 2A does not excuse his criminal liability simply because that buyer turned out to be an undercover agent. And we know from Judge Owens' questioning, this statute isn't so plain. No court has interpreted the statute in the way that the defendant does, including this court in BASCU. And we know it's not so plain because the defendant's interpretation reads into the structure, the legislative history, the context, and it conflicts with the overall regulatory scheme that Congress left intact in the National Firearms Act. So I guess it's a question of who's reading something in or not, right? Like, and, you know, the statute says that it won't apply to a transfer to the United States. And there were some questions about that would be kind of hard questions if somebody, you know, whether somebody's the United States or not. That's not in this case. We know this ATF agent was not only working for the United States, but he was literally doing this in his capacity as an agent. He was getting the gun on behalf of the United States. So I don't think, so whether, because the United States acts through people, whether somebody's acting on behalf of the United States or whether they're acting on their individual behalf could create hard questions. But that's not in this case. It does just say that it blanketly exempts transfers to the United States. And I, you know, I've been trying to think about, and I think at the very end you heard your counsel on the other side say, it seems like a lot of the cases you're relying on are cases where there is a mens rea requirement that narrows and the courts have relied on the mens rea requirement as narrowing a statute. But you're trying to do the opposite with your reading of the statute. You're trying to say that somebody has to know something is true, that they are the United States or acting on behalf of the United States in order for this exception to apply. Let me give you an example that makes, that I'm struggling with. Let's say you have a statute that says, generally speaking, speed limit is 55 miles an hour. Right? Speed limit is 55 miles an hour. But on Tuesdays, that, it doesn't apply. It doesn't apply. And then there's this other statute that says it's 75 miles an hour unless stated otherwise. So it just turns out it's 75 on Tuesdays. And I'm driving to work and I forget it's Tuesday and I'm ripping along at 70 miles an hour, 74 miles an hour, and I get pulled over and I don't know it's Tuesday. So I thought I was speeding. I'm very sheepish. But it's Tuesday. And so this exception that says it doesn't apply. Now, we would not normally ever read in a mens rea requirement, what you might call reverse mens rea, instead of a bad mind, a good mind requirement. We would just say there's an exception for Tuesdays and that might be crazy. But, like, the law just doesn't reach. The law doesn't have a 55-mile-an-hour speed limit on Tuesdays. And so that would be, why are you, is that not what you're doing here under some sort of purpose of, you know, say, well, it's crazy to have a speed limit of 75 miles an hour on Tuesdays. It should be 55 unless you know better. Sure. So I think that the Court can resolve this issue on sort of the broader knowledge issue that we articulate in our brief. But the Court can also resolve this on much narrow grounds specific to this statute, insofar as the knowledge requirement relates to the National Firearms Act. So what we have here, when we look at the plain terms and we're trying to determine what the meaning, what the language of the statute is, we follow tools of statutory interpretation, right, canons of construction. And those include that relevant statutes must be read as a harmonious whole, that statutes can't be in conflict with each other, that Congress doesn't pass an act that would violate another law. And that's what defendants' interpretation would do here. Because to what Congress has said in the National Firearms Act, which it did not repeal, and which 922.0 is sort of the final step in Congress's interest in regulating guns, right, Congress has said, we care about making sure that people who are going to use guns for lawful purposes have them, and we care about making sure that people who are going to use guns for unlawful purposes don't have them. And we're going to require paperwork for all of that, lots of paperwork. We're going to tax guns. Guns have to be registered. In order to do a transfer, guns must be applied for and approved before the transfer happens. And that application requires identification and naming of the buyer and fingerprints and a photograph so that we can confirm that the buyer is lawful. Assuming you mean machine guns, right? Like, you keep saying guns, but you mean machine guns? Right. Sure. In this case, it's machine guns. Right. But if you – part of this whole context is up until – when all this was passed, up until a certain date, you could just own a machine gun. It's kind of crazy, but you just own a machine gun. And then all of a sudden in 1980-something, now you have to register it. But if you're the government, you realize, like, maybe some people aren't – and somehow I'm going to come in possession of Grandpa's machine gun. And I'm like, oh, my goodness. And I've heard stories about this, right?  And so you want to – and so what does the government want in that instance? I mean, we don't really know. This is part of the problem of a purpose of analysis. But one purpose that it could be was they just want to get that into the hands of the government. Hence the blanket exception for transfers to the United States. And that seems to me – I mean, I think that was his argument. And so your purpose of argument is just ignoring the fact that it does serve a purpose to just get it into the hands of the United States. It doesn't – in other words, the opposite way of putting that is it doesn't somehow undermine and make this a null statute to say you're just going to blanketly exempt transfers to the United States or to their agents in this case. Sure. So I would disagree with you that before 922.01 was passed, anyone could just have a machine gun. Machine guns were highly regulated. They were taxed. They had to be registered. Ownership had to be approved by the government. So that was already in place. There was a point where people ended up with machine guns. Like, that's why there's so much – there was a point where people got them. And then they started to be regulated. And then they started to be taxed. And they started to be banned. And so somebody might want to get rid of one, right, and it ends up in the hands of the government. And that would serve a purpose. That would, in theory, serve a purpose. That's their argument, as I understand it. Right. And so just to address – And you have to disprove that if you want – if you're going to rely on purpose to overcome the clear text, which blankedly exempts transfers to the United States, then you would have to show that the purpose that they're relying on is silly or something. And it doesn't seem to me that it's facially silly at all to say that the government just – that you would write a statute that says, yeah, as long as we're getting it into the hands of the United States, that serves a good purpose. Sure. So two responses. Just quickly to go back to your found gun in the attic and you want to dispose of it, right. The NFA provides – that's not a transfer. There are – the transfer is defined by the NFA. And other types of conveyances like that type of conveyance is not a transfer. So it's not governed by all of the regulatory requirements that the NFA requires. It still does require knowledge that you're giving it to the government, but that would be separate. That's not a transfer like we have in this statute. What is it if you have a firearm? An abandonment. What's that? It's abandoning the gun to the government, knowing that it's the government, right, because I found this and I don't want it. So it's not a transfer. It doesn't have to be taxed. It doesn't have to be, you know, the person who's abandoning it doesn't have to register it. So that's different. Your argument is that you – what is a transfer to the government within the meaning of the statute under your reading? It has to include a tax every time for it to fall within the meaning of the transfer to the United States? That can't be right. So Title 26, the National Firearms Act, defines transfer. And Title 26 has a whole slew of requirements that transfers are subject to certain rules and restrictions, including any transfer must comply with the regulations authorized under this section, tax, well, for a machine gun, tax, registration, paperwork. I'm really struggling now because he was convicted for transferring a machine gun. Under your attempt to try to read – you're trying to read transfer really narrowly for purposes of exemption, but somebody could be convicted when they didn't pay the tax. I don't – I'm struggling. So to go back to your purpose question, the reading of transfer matters because 922.01 and the National Firearms Act are a holistic set of relevant statutes that we have to read harmoniously. And defendant's interpretation would necessarily violate the National Firearms Act, which is why we know it's not a plain reading. We don't have to go – I'm not saying it's the purpose. The plain reading – And why would it violate? Why would it violate? Why would saying if you transfer to the United States, whether you know it's the United States or not, that you're exempted from the criminal liability, why would that violate? Because he hasn't done the paperwork. He hasn't done an application. The gun isn't registered. The testimony at trial was the gun wasn't registered. So none of that was required. That's still required under the United States. In theory, you could – that's the thing. In theory, you could find somebody guilty under possession for all the – so I still don't see how it violates because all that's being exempted is the precise act of transferring it. So all those things you could, in theory, still find criminal liability for all of those things, just not for the literal transfer to the Federal Government. Right. So the facts in this case was that the defendant made sure that the buyer was, quote, not a cop. The pricing was that it was for a street sale. There's no question that this was a street sale. There's really no dispute that he didn't – that none of the still-standing requirements under the NFA were not followed. So that's how we know that the plain text isn't so plain. And then we can move on to what other courts have done, which is focus on the legislative history, which is plain in Senator Hatch's statements that Subsection 2A, it's an official government use exception. It authorizes manufacturers and dealers to continue to possess and sell their machine guns to the government, going through that whole authorization process, because the government still has a legitimate use for them. Right? So we want to make sure that no one reads this statute to prohibit that continued conduct by manufacturers and dealers, but it is unquestionably a total ban on the private transfer and private possession of machine guns, except for Subsection 2B. So what happened in Defendant's case, or in this case, is that Defendant thought it was a private transfer, right? But he doesn't fall within the exception of 2B, which is the private transfer exception, because that requires a lawful transfer of a gun that was lawfully registered prior to 1986, and we don't have that here. So he's trying to shoehorn his argument into a Subsection 2A exception, and it just isn't. No court has ever held that. Does it matter that B, you're using the word lawful transfer, but the way you're reading transfer in A, it would also have the word lawful in front of it, right? Because B says any lawful transfer, but A, you're saying it's only a transfer in A if it's a lawful transfer to the United States. Right. The lawfulness is presumed because it's to the government or from the government, and the government has to comply with the requirements of the NFA. If the government didn't, what if I knew it was the government, but the government screws up? Have I committed a crime because the government didn't do the paperwork correctly? I'm selling, you know, I'm selling, I'm a firearms company or something, and I'm selling to the government to shoot up a school, or I don't think it really matters. If you know it's the government, and there are all kinds of things that the government may be doing that we don't think are appropriate, but I don't know why that matters, but I'm selling to the government, and I know it's the government, and I think it's all appropriate, but it turns out the government isn't doing the paperwork and such correctly. Have I violated the law because I, under your argument, because it's not a lawful transfer in some sense? Because you're reading lawful into 2A. I think as long as... So you're not really reading lawful into 2A. You're just reading a knowledge requirement into 2A and a reverse mens rea requirement. And, again, that goes back to my 75-55 hypo. I don't know any other circumstance where we do that, where there's a clear textual exception, or I should say broad textual exception, and we just read in and say, yeah, but you've got to know that you fall within that exception. Sure. And, again, the court doesn't have to resolve this case on sort of that broadly applicable resolution, right? But the court, how the court can resolve this case is by asking, is the text plain? It can't be plain because reading it the way that the defendant reads it as plain would itself be in violation of another act that Congress meant to be read as a whole. Can I ask this in a different way? Yes. If you accept what the appellant is arguing here, then you would essentially, if I understand it, exempt traditional law enforcement use of undercover agents in the enforcement of this law. Is that essentially? I'm not sure that I understand. So our reading is that the undercover agent, this fellow was an undercover agent.  And so, therefore, the argument is that he was transferring to the government within the meaning of this statute, and, therefore, it's exempt. Right. If that is correct, well, and I also understand that traditionally law enforcement, federal law enforcement, uses undercover people. Sure. Drug enforcement and all kinds of things. So the effect of this would be, if you accept the appellant's interpretation, that you would exempt that kind of traditional law enforcement conduct from this act. Right. Which would be inconsistent with the whole rest of the act. Precisely. Which is why I called it at the beginning sort of an unwritten amnesty that is counter to the intent of this statute, to the National Firearms Act requirements, and is not a tenable interpretation. Is that true? Because if I walk up to and I transfer and the transfer of the firearm is exempted, pure to plain language here, what else have I done just before I transferred it? I possessed it. Right? And there is no. Well, not necessarily. I mean. Right. Right. So, in theory, like it could be, like this case maybe, but we don't. But what I'm asking, is it necessarily true that you couldn't do sting operations? Because, in theory, you would still prosecute somebody for the sting operation, for the possession aspect of it, even though they gave it to the United States. And then you would just have to, you just kind of went to, I think, a conversation that Judge Owens was having with your opposing counsel right at the beginning of his argument, which is, the judge would just have to be clearer in instructing the jury so that they didn't improperly convict them under the wrong prong. I apologize, Your Honor. Are you asking me a question? No, I'm asking you, why does this actually prevent people from doing stings? Because it seems to me, in the vast majority of cases, you would also be able to prosecute somebody for possessing the firearm, even if this exemption read the way that Mr. Kitson is arguing. You could still convict them under possessing. Sure. So this doesn't prevent the government from continuing to do sting operations, but it doesn't excuse a culpable defendant who thought he was selling a black gun trafficker from culpability. Right. Well, I thought I understood Judge Schroeder's question to be, wouldn't this basically stop you from being able to do sting operations? Wouldn't it be exempting sting operations? And I thought your answer was yes. And I'm saying, is that really true? I think you could still do sting operations, or am I wrong about that? Sure. Of course. I'm sorry. Then I must have misunderstood if that was. You could do some. You could catch the dumb ones. The smart ones know how to actually handle the goods. Right. They have someone else do it. So you could still catch the dumb ones. You could still do the ATF house raids. Those you could still do. But the Victor Boots of the world you could not catch, because Victor Boot is not going to walk up with a box of machine guns. So I'm coming close to the end of my time. If there are no further questions, I'm happy to submit them. I do want to ask you something, because there's this whole other part of the case, which I think most people were actually more excited about than this discussion, which was the Bruin discussion. Sure. And, you know, we had a recent case called Duarte. Yes. Which, for the most part, I think the government was happy with the result. However, here's what I would say, is that in Duarte, one of the ways the case could have been resolved is on Miller v.  We could have said, look, there was this previous case, Vongay, and that hasn't been changed by Bruin in the end of it. Our court did not do that. Our court went back and did the full Bruin analysis, and two of us here were on that panel. We were familiar with what happened in that case. Here, the district court judge said, you know what? Under Bruin, we have this previous Ninth Circuit case. I think we're good enough. I'm paraphrasing. That's kind of what happened here. Sure. After Duarte, which I understand is a case the government is a fan of, it seems to me that we can't just do what the district court did in this case, that we actually do have to go back and kind of do the whole Bruin analysis, because that's what we did in Duarte. Sure. So don't we have to do that in this case? Not us. Maybe us. Maybe district court. Can't we just say, well, the other one was close enough, and can we still do that? Sure. I, of course, defer to the two members of the panel who are on Duarte and your reading of how you decided that. My reading is that Duarte says, Bruin didn't overturn Vongsay. It's not irreconcilable. But we will still go on and do a fresh Bruin analysis. And here, under the fresh Bruin analysis, 922G1 is fine. So I think what we would say here is that Bruin is not clearly irreconcilable with Henry, but even under a fresh analysis, the statute is constitutional under the Bruin two-step framework. But would you agree that what the district court did, you may agree with the result, but the district court did not do the fresh Bruin analysis? That's correct. Okay. In my recollection, yes. But you do not read the Duarte as requiring that analysis? Correct. I do not read it as requiring that. That's a choice that was made. If there are no further questions, I will submit. All right. Thank you. Thank you. Thank you. I wanted to start with one of the arguments that my friend was responding to, which is the notion that our reading of this exemption would undermine sting operations. The first thing I want to say about that is that the real thing in this statute that creates a problem for sting operations, problems that I think would be uncontroversial, is that it doesn't include attempt liability. Not the exception in 022A. The reason I say that is, for example, if you were to do a sting with a fake machine gun and cash changes hands and someone buys the machine gun, there's no doubt that that person would not be liable under this statute, despite intending to commit every single element of the offense and having a perfectly culpable mental state, because one of the things, because it doesn't include attempt, that the government needs to prove is that the weapon really was a machine gun. This statute creates problems for sting operations necessarily by virtue of the decision of Congress not to include attempt liability. It doesn't exclude sting operations, but it's not a statute that's designed to create as broad a breadth for ATF sting operations as is possible. I don't know why Congress decided to do it that way, but I would note that sting operations, while they're commonly used, especially when it comes to firearms, are sometimes very, very controversial, and there may not have been the intent to try to enable as many sting operations as possible with this statute. With respect to the notion that no court has adopted our reading, no court's been faced with this issue of the transfer versus the possession. So I do not think it's the case that no court has adopted this reading because lots of courts have considered it and rejected it. This unusual circumstance just hasn't arisen before. And even though I think the court was commenting that people would be foolish to personally possess firearms that they're intending to sell, the cases suggest that most of the time people really are that foolish because there doesn't seem to be an issue most of the time getting people to actually possess, at least briefly, the machine guns. Well, even if they didn't, like, possess it in the sense of physically possess it, there's a whole question of whether or not possession would reach sort of a constructive or aiding and abetting sort of, like even though I don't physically hold it, if I'm carrying your briefcase when you're physically holding it, then in theory the government could argue for conviction on that. Am I correct on that? Yes, Your Honor. And in this case, jury instruction included constructive possession. It would not always be the case. It just would be something the government would have to prove, that you used that person, but you were the person really in control of the firearm. I'm trying to think of what cases could not be reached. It seems to me, I'm struggling to think of a hypothetical that could not be reached just on possession plus constructive possession if the transfer is read the way you're asking for it to be interpreted. I mean, this case is kind of seems like the hypothetical to me in that, you know, our theory was that Mr. Kitson. Yeah, you have the fact that the jury did something different with actual possession, but you do have the problem of the Supreme Court's view on inconsistent verdicts in Powell. I do want to note in the procedural history of this case, we filed a Rule 29 motion to dismiss or at least get rid of the aiding and abetting instruction that was solely on the transfer theory, and the court rejected that Rule 29 motion. I think at a minimum, if the court disagrees that by view that a judgment of acquittal is appropriate, a new trial without this transfer theory would be appropriate. I do think that's the proper analysis. I understand. Can you talk about the Bruin question? Because I think that's why a lot of people might be here today and we haven't talked about it. Sure. But can you talk about whether you think that, obviously you disagree with it just the court did. Do you think under Duarte the path is to do a complete redo? Or what do we do after Duarte? What's the procedure? Your Honor, I think that it's clear that in order, not just under Duarte, but also under Bruin, that in order for a statute to be deemed constitutional, someone has to have done both the plain text and historical analysis of that statute. And that has not been done in this case, and previous case law has not done it in this circuit. So I do not think that's happened yet, and I think it has to happen in order to justify it, whether it happens by virtue of this court or whether it happens by remand. If that does need to happen, what is your view as to whether or not this panel should do it or whether we should remand it to the district court to do it in the first instance? I think the court should remand it because it's a factual inquiry or at least a partial factual inquiry into the history. Since we're on Bruin, there was... You know, one point I want to make about where the case has gone in terms of the historical analogues is that there's really two classes of weapons that are being discussed in the briefing. One is so-called Bowie knives. And I wanted to point out that only three states had possession bans of Bowie knives. Georgia, Arkansas and Tennessee. And Georgia's ban, although as with respect to pistols, was found to be unconstitutional. So it's only two that survived constitutional review. And all three of those states also banned pistols. The other weapon that I think subsequent case law has discussed, particularly Duncan v. Bonta, are so-called slung shots. And both slung shots and Bowie knives really share a commonality that's just not true of fully... Oh, and I see I'm way over my time. It's OK. Finish your point. A slung shot... A guide for producing a slung shot literally advises someone to put some change in a sock and some sand in it. That's what a slung shot is. A Bowie knife is not some new development in knife technology that occurred in the 19th century. These are very simple, very cheap weapons. And the thing that distinguishes them are that they're so cheap and thus easy, frankly, for the lower classes to afford. And I've briefed the issue of the trend of restricting firearm possession to disfavored groups. And weapons that are easy to conceal. Neither of those things are true of the PPSH-41 in this case. It was sold for $8,000, and it is not easy to conceal. I'm way over my time. Thank you, Ken. Thanks to both of you for taking some tough questions. Excellent briefing. Very fine argument. We appreciate this matter submitted. And I did not know that was called a slung shot. If you've ever seen the movie Death Wish with Charles Bronson when he swings around the sock, now you know what it's called. So we are done for today, and we will resume tomorrow at 8.30. Maybe even a little earlier, but 8.30. Thank you.
judges: SCHROEDER, OWENS, VANDYKE